NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada State Bar No. 13644
DANIEL D. HOLLINGSWORTH
Assistant United States Attorney
Nevada State Bar No. 1925
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Daniel.Hollingsworth@usdoj.gov
Attorneys for the United States

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:19-CR-064-APG-NJK |
| Plaintiff, | **United States of America's Motion for an Interlocutory Order of Sale of the 2018 Honda Accord LX and Order** |
| v. | |
| KING ISAAC UMOREN, | (ECF No. 47) |
| Defendant. | |

The United States moves this Court to issue an Order for an Interlocutory Sale of the 2018 Honda Accord LX held in the name of King Isaac Umoren (Umoren), VIN 1HGCV1F12JA012572 (2018 Honda) (property) listed in the Criminal Indictment (ECF No. 1), authorizing the United States Marshals Service (USMS) to sell the property through one of its approved methods.

The grounds for granting the Order for an Interlocutory Sale of the 2018 Honda are as follows. First, the 2018 Honda continues to deteriorate pending the trial of King Isaac Umoren. Second, the value of the 2018 Honda continues to depreciate. Third, the storage costs and other maintenance costs of the 2018 Honda will continue to accrue against its value. Fourth, the sooner the 2018 Honda is sold, the more net sale proceeds will exist. Fifth, this Court is authorized to approve interlocutory sales.

This Motion is made and is based on the papers and pleadings on file herein, and the attached Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF THE CASE

### A. Procedural History

On March 20, 2019, the Grand Jury returned a 16-Count Criminal Indictment (Indictment) (ECF No. 1), charging King Isaac Umoren (Umoren) in Counts 1 through 6 with wire fraud in violation of 18 U.S.C. § 1343; in Counts 7 through 11 with aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) with 1028A(c)(5) and 18 U.S.C. § 1343; and in Counts 12 through 16 with money laundering in violation of 18 U.S.C. § 1957 and alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) with 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(1); and 21 U.S.C. § 853(p).

The court scheduled the jury trial for May 20, 2019 (ECF No. 21). Umoren requested to continue the trial to have more time to review the case, and the court granted it, scheduling the jury trial for September 23, 2019 (ECF Nos. 22, 23). The government requested to continue the trial to allow for new defense counsel to review the case, and the court granted it, scheduling the jury trial on December 16, 2019 (ECF Nos. 25, 26). The government requested to continue the trial, and the court granted it, scheduling the jury trial for April 20, 2020 (ECF Nos. 36, 37).

### B. Statement of Facts

Umoren was involved in a tax preparation business known as Universal Tax Services and Prudential Tax Solutions. From on or about May 1, 2016, through on or about May 1, 2018, Umoren devised, intended to devise, and participated in a material scheme and artifice to defraud and to obtain money and property from prospective buyers through false, fraudulent, and material pretenses, representations, promises, half-truths, and concealment (Ind. ECF No. 1, p. 1).

Umoren provided the buyer with fee deposit reports purporting to show UTS receiving deposits from a company, Refund Advantage, in approximate amounts of $4,917,459.17 in 2016 and $5,797,193.72 in 2017, when, in truth and in fact, Umoren knew

those fee deposit reports were fraudulent, as Refund Advantage had only deposited approximate amounts of $285,199.33 and $169,575.57 into UTS accounts in 2016 and 2017, respectively (Ind., ECF No. 1, p. 2).

Umoren provided fraudulent bank statements to the prospective buyers, when, in truth and in fact, he knew that the purported balances in those fraudulent bank statements did not exist. For instance, Umoren provided Prospective Buyer #1 with a purported statement from a Bank of America account ending 9722, which falsely stated that the account balance was $3,396,728.00 when, in truth and in fact, the account's balance was only $88.00. Likewise, in another instance, Umoren presented Buyer #1 with a forged statement from the same bank account, which falsely purported that the account balance was $2,761,493.23 when, in truth and in fact, the account's balance was $0.00 (Ind. ECF No. 1, p. 3).

Umoren provided the buyer with his purported personal income tax returns for Tax Years 2014 and 2015, which stated Umoren received millions of dollars in income from UTS's business when, in truth and in fact, Umoren knew he had filed no personal income tax returns with the Internal Revenue Service (IRS) in Tax Years 2014 and 2015, and did not receive the income amounts purported in the fraudulent unfiled tax returns (Ind., ECF No. 1, p. 3).

Umoren provided the buyer with numerous Forms 1099-MISC, which purported to reflect UTS paying millions of dollars in income to independent contractors preparing tax returns for UTS clients when, in truth and in fact, Umoren knew that none of the Forms 1099-MISC had actually been filed with the IRS and UTS had not paid millions of dollars to independent contractors to prepare tax returns for its clients (Ind., ECF No. 1, p. 4).

Umoren provided client lists and a client database to the buyer, and purported that the clients contained in the lists and database were UTS clients and that UTS's client base therefore consisted of approximately 12,700 clients, when, in truth and in fact, approximately 700-800 of the individuals were actually UTS clients, and Umoren had stolen from unrelated companies most of the client information contained in the lists and

database, including those companies' client names, social security numbers, and confidential taxpayer information (Ind., ECF No. 1, p. 4).

Umoren knowingly provided materially false financial statements, profit and loss reports, statements of net worth, and miscellaneous financial documents to Prospective Buyer #1 for purposes of falsely inflating UTS's value (Ind. ECF No. 1, p. 4).

**C. FBI took possession of the 2018 Honda.**

FBI took possession of the 2018 Honda on December 17, 2019 during the execution of a civil search and seizure warrant for the property. The warrant was issued on December 13, 2019 and expired on December 26, 2019.

**D. The 2018 Honda continues to depreciate in value and the storage costs continue to increase pending the trial of King Isaac Umoren.**

The FBI seized the property on December 17, 2019, and it has been in FBI custody since then. At the time of seizure, the 2018 Honda value was $17,700.00. The FBI will transfer the 2018 Honda to the USMS during the week of January 6, 2020. The property will begin to accrue storage fees at that time.

While the property is in storage, the expenses will continue to accrue against its value pending Umoren's trial and the property will continue to depreciate in value.

## II. ARGUMENT

This Court has authority to issue an Interlocutory Order of Sale. "At any time before entry of a final forfeiture order, the court, in accordance with Supplemental Rule G(7) of the Federal Rules of Civil Procedure, may order the interlocutory sale of property alleged to be forfeitable." Fed. R. Crim. P. 32.2(b)(7).

> On motion by a party or a person having custody of the property, the court may order all or part of the property sold if: (A) the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the property is excessive or is disproportionate to its fair market value; (C) the property is subject to a mortgage or to taxes on which the owner is in default; or (D) the court finds other good cause.

Supplemental Rule G(7)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure (paragraphs

omitted). Only one of the grounds for interlocutory sale is required since Supplemental Rule G(7)(b) is disjunctive. *See Shelter Cove Marina, Ltd. v. M/Y ISABELLA*, No. 3:17-cv-01578-GPC-BLM, 2017 WL 5906673, 2 (S.D. Cal. Nov. 30, 2017) (explaining that another Supplemental Rule for interlocutory sale with similar language is disjunctive); *Cal. Yacht Marina-Chula Vista, LLC v. S/V OPILY*, No. 14-cv-1215-BAS-BGS, 2015 WL 1197540, 2 (S.D. Cal. Mar. 16, 2015) (same).

Three of the four reasons for the interlocutory sale apply in this case regarding the property: the property will deteriorate while the criminal prosecution and forfeiture processes are completed; the storage costs continue to increase; and other good cause, the value of the vehicle depreciates over time, and the sooner the vehicle is sold, more net sale proceeds will exist. Supplemental Rule G(7)(b); Fed. R. Crim. P. 32.2(b)(7); see *United States v. One Parcel of Real Prop. Described as Lot 41, Berryhill Farm Estates*, 128 F.3d 1386, 1389–90 (10th Cir.1997) (explaining the district court orders an interlocutory sale when the property is deteriorating and decaying).

"A sale must be made by a United States agency that has authority to sell the property, by the agency's contractor, or by any person the court designates." Supplemental Rule G(7)(b)(ii). In this case, the USMS will sell the property as "governed by 28 U.S.C. §§ 2001, 2002, and 2004, unless all parties, with the court's approval, agree to the sale, aspects of the sale, or different procedures." Supplemental Rule G(7)(b)(iii).

Without the Interlocutory order of sale, the property cannot be sold until the court enters the Final Order of Forfeiture. Fed. R. Crim. P. 32.2(b)(4) and 21 U.S.C. § 853(h). If the government waits for the Final Order of Forfeiture, the value of the vehicle will have depreciated even further and the storage costs and maintenance costs will continue to accrue.

In *United States v. Guzman*, No. 3:08-CR-23-2, 2013 WL 12228400 (M.D. Tenn. Oct. 7, 2013), the district court found and held:

> The Government has presented evidence suggesting that the value of the [property] continues to decrease with time and, as of last month, was approximately $16,500.00 less than the amount the Government had paid for storage and maintenance up to that

> point. Thus, the Court finds that the expense of keeping the [property] is both excessive and disproportionate to its fair market value. Given the apparent continued depreciation in value and rising cost of maintaining the [property], the Court finds an interlocutory sale is the best way to preserve its remaining value.

Id. at 2 (brackets added); *United States v. Haley*, No. 11–CR–0540–WDQ, 2011 WL 6202787, 1 (D. Md. Dec. 8, 2011) (explaining "that the Government's desire to avoid storage costs (particularly with respect to the twenty-two automobiles and the tractor trailers) and the risk of depreciation in value (particularly of the computers and other electronic items) constitute "good cause" for the interlocutory sale of the personal property …[,]" and the real property to avoid liability for accidents and to "avoid falling in arrears on the payment of applicable property taxes.").

In this case, the value of the 2018 Honda will continue to depreciate and the maintenance and storage costs will continue to rise and dilute the equity.

"The sale proceeds are substitute res subject to forfeiture in place of the property that was sold[, and] the United States must maintain them in an interest-bearing account." Supplemental Rule G(7)(b)(iv); *United States v. King*, No. 10 CR. 122 (JGK), 2010 WL 4739791, 4 (S.D.N.Y. Nov. 12, 2010).

///
///
///
///
///
///
///
///
///
///
///
///

**III. CONCLUSION**

Based on the foregoing reasons, the Court should order the interlocutory sale of the 2018 Honda Accord LX held in the name of King Isaac Umoren, VIN 1HGCV1F12JA012572.

Dated: January 2, 2020.

Respectfully submitted,

NICHOLAS A. TRUTANICH
United States Attorney

*/s/ Daniel D. Hollingsworth*
DANIEL D. HOLLINGSWORTH
Assistant United States Attorney

IT IS SO ORDERED:

HONORABLE ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

DATED: March 2, 2020